## DORSEY LAND & LUMBER CO. *v.* BOARD OF DIRECTORS OF GARLAND LEVEE DISTRICT.

## Opinion delivered April 1, 1918.

1.  LEVEES—IMPROVEMENT DISTRICT—AMENDMENT OF STATUTE.—Where Acts 1913, p. 1267, creating an improvement district, inaccurately describes the land, but the true boundaries can be ascertained from the act, an amendment by Acts 1917, p. 235, to make description certain, and resulting in a change of the boundaries, does not affect the validity of the district as originally formed, and the change of boundaries takes effect only from date of amendment.

2.  LEVEES—CREATION OF IMPROVEMENT DISTRICT—CERTAINTY OF STATUTE.—Where the description in an act creating a levee improvement district is not sufficiently certain to put the property owners on notice as to the land to be included, and by the aid of extrinsic evidence the location of the boundary points can not be ascertained from such description, the statute is void.

3.  LEVEES—IMPROVEMENT DISTRICT—DESCRIPTION—CLERICAL ERROR.—Where a levee improvement district act described a certain boundary point as the intersection of the west bank of the Red River with the southern boundary of section 20, and the government plats showed that the only section in the township whose southern boundary intersected the river was section 29, the mention of 20 instead of 29 was an obvious clerical error, and did not invalidate the act.

4.  BOUNDARIES—PRESUMPTION—GOVERNMENT SUBDIVISIONS.—Descriptive words in an instrument naming townships and sections or subdivisions thereof are presumed to have reference to government plats.

5.  CONSTITUTIONAL LAW—JUDICIAL POWERS.—Where the description of an improvement district as set forth in a statute commences at the intersection of a line of section 20 of a township with a named river, it is not an invasion of legislative power for the court to construe the statute as intending to name section 29—the only section in the township answering the description.

6.  LEVEES—IMPROVEMENT DISTRICT—CERTAINTY OF DESCRIPTION.—A description, in an act creating an improvement district, defining a boundary as the "line at the foot of the hills where the high land and overflow lands, or bottoms, join," *held* sufficiently certain where it was possible to approximately follow the line, even though lines run by surveyors according to description might vary 100 feet.

7.  LEVEES—IMPROVEMENT DISTRICT—ASSESSMENT—LEGISLATIVE DETER-
    MINATION.—A statute authorizing the board of directors of a
    levee improvement district to assess property in the district "upon
    the valuation as it shall appear each year upon the real estate
    assessment book," *held* a legislative determination that benefits
    will accrue in proportion to the valuation of the land, and courts
    will respect such determination unless arbitrary and erroneous.

8.  LEVEES—IMPROVEMENT DISTRICT—ASSESSMENT. — Where certain
    property in a levee improvement district will not be relieved from
    overflow to the same extent as other property in the district, the
    assessment of such property upon valuation, where such method
    is provided by statute, is not erroneous or arbitrary.

Appeal from Miller Chancery Court; *Jas. D. Shaver,*
Chancellor; affirmed.

Action by the Board of Directors of Garland Levee
District against the Dorsey Land & Lumber Company
and others. Judgment for plaintiff, and defendant
named appeals.

*W. H. Arnold,* for appellant.

*Moore, Burford & Moore,* for appellee. *Rose, Hem-
ingway, Cantrell, Loughborough & Miles, amici curiae.*

McCULLOCH, C. J.   The General Assembly of 1913,
by special statute duly enacted, created an improvement
district for the purpose of constructing a levee along the
west bank of Red River in Miller County, and included
in the district lands of a total area of about 53,000 acres
on the west side of the river in that county. Acts of
1913, p. 1267. Nearly one-half of the lands embraced in
the district were then and are now owned by the Dorsey
Land & Lumber Company, a domestic corporation. The
territorial boundaries of the district were described in the
statute as beginning at a point where a certain section
line intersects the west bank of Red River south of Gar-
land Ark, "thence in a southerly direction and following
the meanderings of Red River to a point where said line
intersects the south line of section twenty (20), town-
ship eighteen (18) south, range twenty-six (26) west,
thence north sixty (60) degrees west to the point in sec-

tion nineteen (19), township eighteen (18) south, range twenty-six (26) west, where said line strikes the high ground or 'hills,' thence northeasterly, following the meandering of the line at the foot of the hills where the high land and overflow lands, or 'bottoms,' join, to the point where said line between the high land and overflow land intersects the section line between sections fifteen (15) and twenty-two (22), * * * township sixteen (16) south, range twenty-five (25) west, thence east along said section line to the point of beginning.''

Another section of the statute conferred authority upon the board of directors of the said district to levee the west bank of Red River between the two points specified in the description, and discretion was lodged in the board of directors to decide upon the precise location of the levee "so as to protect as far as practicable, the property in the district above named.'' Section 4 of the statute provided for levying assessments for the purpose of raising funds to build, repair and maintain the levee. It was provided therein that:

"The Board of Directors of Garland Levee District shall have power, and it is hereby made their duty, to assess and levy annually a tax upon the valuation as it shall appear each year upon the real estate assessment book * * * upon all lands and tramroads in said district, and all natural gas or oil pipe lines within said district, and upon the railroad track of all railroad companies within said district as appraised by the board of railway commissioners; * * * but such tax on said lands, natural gas or oil pipe lines, tramroads and railroad tracks shall in no year exceed the rate of ten (10) per cent. of the assessed valuation of said property within said district.''

The statute also authorized the district to issue bonds for the purpose of borrowing money for use in the construction of the levee. The levee was located and constructed in accordance with the authority conferred by the statute and bonds were issued and sold.

The present action was instituted in the chancery court of Miller County by the Board of Directors of Garland Levee District against the Dorsey Land & Lumber Company and other delinquent taxpayers in the district to enforce payment of overdue assessments, and appellants resisted payment on the ground, among other things, that the statute creating the district was void because the description of the territory embraced in the district was so vague and imperfect that it was impossible to ascertain the true boundaries of the district. The method of assessment authorized by the statute was also assailed as being violative of the rights of the property holders.

The General Assembly of 1917 (Acts of 1917, p. 235) amended, or rather re-enacted, the aforesaid statute of 1913, with a slightly different description of the boundaries of the district, intending to correct and make definite what was supposed to be the imperfect description contained in the old statute. One of the sections of the new statute declared the purpose of the lawmakers to be to validate all of the proceedings under the former statute.

(1) We will first discuss the question of the correctness and certainty of the description in the act of 1913, and as the conclusion reached on that question is favorable to appellee it will be unnecessary to discuss the amendatory statute subsequently enacted, for if it be found that the later statute changed the boundaries of the district it did not affect the validity of the district as originally formed, but the change took effect only from the date of the enactment of the new statute. It may be said, however, in passing, that if the new statute made any change in the boundaries of the district it was very slight and affects very little of the territory as originally described.

(2) It must be readily conceded that unless the territory to be affected by an improvement scheme is described with sufficient certainty to put the property owners on notice the statute is void. *Ferrell* v. *Keel,* 105 Ark. 380, 151 S. W. 269; *Norton* v. *Bacon,* 113 Ark. 566,

168 S. W. 1088; *Morgan Engineering Co. v. Cache River Drainage District,* 122 Ark. 491, 184 S. W. 57; *Heinemann v. Sweatt,* 130 Ark. 70. On the other hand, if the description can be made certain by resort to extrinsic evidence to ascertain the location of the boundary points mentioned in the statute itself, either in express words or by necessary implication, the description is sufficient. In other words, if the language of the statute itself furnishes the key for the ascertainment of the boundaries then it is sufficient.

(3-5) Two different imperfections are claimed to be in the language of the original statute describing the boundaries of the district. The first contention relates to that part of the descriptive words specifying the point where the line of the river bank intersects the south line of section 20. It is shown by the testimony in the case that Red River has made frequent changes in its course at and near this locality, but that it has never touched section 20. Appellee introduced in evidence what is called a soil map that is said to have been issued by the Federal Government in the year 1904, and this map shows the intersection by the river of the south boundary of section 20. The authenticity of this map, at least as correctly showing the location of the river, is not satisfactorily established. The government plats in the office of the State Land Commissioner of the lands in the township mentioned show that Red River ran considerably south of the south line of section 20 in the year 1841 when the surveys were made. The plats show, too, that Red River intersected the south boundary line of section 29, but that the west bank of the river did not intersect the south boundary of any section in that township east of section 29. Descriptive words in an instrument concerning the boundaries of lands where townships and sections or subdivisions thereof are mentioned are presumed to have been used with reference to government plats. But where, as in this case, the purpose of the lawmakers was to describe the boundaries of a levee district so as to include lands to be affected by the con-

struction of the improvement, it is presumed that the framers of the statute meant the descriptive words to refer to conditions as then existing rather than to the technical meaning of the descriptive words employed. It is plain, however, that if we give a literal application to the words used the description is imperfect, for neither according to the government plats nor the location of the river as shown by the testimony in the case has the south boundary line of section 20 ever been intersected by Red River. On the other hand, we find, not only from the plats themselves, but from the other testimony in the case, that at the time of the passage of this statute the south boundary line of section 29, and no other section, was intersected by the west bank of the river, and we think that when the whole description is considered in the light of the object to be attained by the legislation it is obvious that there was a clerical error made in the description, and that section 29 was intended to be mentioned instead of section 20. The boundary line is the west bank of Red River, and we can see from the language used that it was intended to leave that point where it intersects the south boundary line of a certain section, and thence run north 60 degrees west to the ''high grounds or hills * * * where the high land and overflow lands, or bottoms, join.'' No other point exists except in section 29, where the boundary line leaves the west bank of Red River at its intersection with the south boundary line of a section. Hence it can be seen with certainty that the Legislature meant to adopt a boundary line which follows the west bank of the river to some point in one of the sections of the township mentioned where the line intersected the south boundary line of a section, and that section 29 was necessarily meant to be described. It is obvious error, and it is our duty to discard the error and accept the obvious meaning of the framers of the statute. *Bowman* v. *State,* 93 Ark. 168, 129 S. W. 80. This is not reading into a statute something which the Legislature failed to put there, nor does it constitute a judicial effort to correct mistakes

of the Legislature, but it is merely interpreting the language used by the lawmakers so as to ascertain their real intention without reading anything into it except that which was obviously meant to be used.

(6)   We are of the opinion, therefore, that the descriptive words are not so uncertain as to render the statute void.   Nor can it be said that the other descriptive words with reference to the ''line at the foot of the hills where the high land and overflow lands, or bottoms, join,'' is too uncertain description to be valid.   The evidence of engineers and surveyors is to the effect that the line between the bottom lands and the uplands is sloping and rather uncertain, but it is not impossible to approximately follow the line.   The worst that can be said about the line with respect to its uncertainty, to accept the statement of one of the engineers, is that lines run by different engineers according to the description given might vary as much as 100 feet.   It is not essential that a line of that kind should be shown with absolute accuracy.   Only reasonable approximation is required, for the purpose of the lawmakers was to point out a line between the lands that would probably be benefited by the construction of the levee and those that would receive no benefit.   Such a line as that would necessarily be to some extent an approximation and not an absolutely definite and accurate line.   The attacks upon the validity of the statute on account of alleged indefiniteness are therefore unfounded.

(7)   It is next contended that the method of assessments adopted by the board of directors is not in accordance with the terms of the statute.   It is contended that the language of the statute, when properly interpreted, authorizes the board of directors to levy assessments upon benefits to be actually ascertained within a certain prescribed maximum, and that the board of directors proceeded without authority in attempting to levy annual assessments upon valuations.   The statute very plainly constitutes a legislative determination that benefits will accrue in proportion to the valuation of the land

in the district, and adopts the assessments made for purposes of county and State taxation as a basis of valuation. An annual tax not to exceed 10 per centum of the assessed valuation is authorized. This is the method adopted by the board of directors. This court has decided that a legislative determination that benefits from a given improvement will accrue in proportion to valuation must be respected by the courts unless found to be arbitrary and demonstrably erroneous, and that such a method of arriving at the benefits from the improvement is valid. *St. Louis Southwestern Ry. Co.* v. *Board of Directors,* 81 Ark. 566, 99 S. W. 843; *Alexander* v. *Board of Directors Crawford County Levee District,* 97 Ark. 330, 134 S. W. 618; *Moore* v. *Board of Directors Long Prairie Levee District,* 98 Ark. 116, 135 S. W. 819; *Salmon* v. *Board of Directors,* 100 Ark. 369, 140 S. W. 585; *Alcorn* v. *Bliss-Cook Oak Co.,* 201 S. W. 797. That principle has often been recognized and applied by the Supreme Court of the United States in similar cases. *Webster* v. *Fargo,* 181 U. S. 394, 21 Sup. Ct. 623, 45 L. Ed. 912, 916; *L. & N. R. Co.* v. *Barber Asphalt Paving Co.,* 197 U. S. 434, 25 Sup Ct. 466, 49 L. Ed. 819; *Wagner* v. *Baltimore,* 239 U. S. 265; *Houck* v. *Little River Drainage District,* 239 U. S. 254, 36 Sup. Ct. 58, 60 L. Ed. 266; *Myles Salt Co.* v. *Board of Commissioners,* 239 U. S. 478, 36 Sup. Ct. 204, 60 L. Ed. 392.

(8) The determination of the Legislature as to the method of assessment is not arbitrary or erroneous on its face, nor does the testimony in this case show that it is palpably wrong. There is considerable testimony tending to show that the lands of appellant lying near the southern end of the district will not be relieved from overflow to the extent of other lands in other portions of the district, but it does not necessarily follow that the methods of assessment are upon the wrong basis or that they are unequal. The height of overflow from which relief is afforded to a given tract of land is not necessarily determinative of the question of extent of benefits. "A tract within the district may be above overflow without

the levee,'' said this court in *Carson* v. *St. Francis Levee District,* 59 Ark. 513, 27 S. W. 590, ''and yet, in various ways, greatly benefited by the levee.'' At any rate the conditions are not such as to justify the court in declaring that the legislative decision involved in the creation of the district and the imposition of the burden of taxation is demonstrably erroneous. To set aside that decision of the lawmakers on any other ground would constitute an invasion of the peculiar province of that branch of government.

The chancellor was correct in upholding the district, and the assessments made against the lands. The decree is affirmed.

HART, J., dissents from that part of the decision which holds that the description is sufficient.