HOEHLER *v.* W. B. WORTHEN CO.

Opinion delivered July 3, 1922.

HIGHWAYS—PRIORITY OF BONDS ISSUED IN INSTALLMENTS.—Though bonds issued under authority of a special statute creating a certain road improvement district (Acts 1909, p. 1151), were issued and sold in two successive allotments, all the bonds issued were within the authority conferred, and amounted to a single issue, and no priority was created in favor of the holders of the allotment just issued, and the funds in the hands of a receiver appointed on default in judgment under the statute should be distributed *pro rata* on all matured bonds.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Alfred H. Burr* and *George H. Burr,* for appellants.

1. Special act 402 contemplates and authorizes but a single issue of bonds. The first bonds issued are valid and the second issue of bonds is invalid as against appellants, because unauthorized. This is the legislative intent as plainly appears upon the face of the act itself. See §§ 10, 12, 13, 15, 16, 18, 19, 21 of the act.

It cannot be doubted that the Legislature intended that the commissioners should borrow the entire amount of money required to construct the whole improvement in a single bond issue. This intention is made clearer by the provision in section 16, *supra,* that "all uncollected assessments are pledged for the repayment of such loan, and that negotiable bonds may be executed and issued therefor;" by the provision in section 18 that "for the payment of both principal and interest of the bonds to be issued under the provisions of this act, the *entire* revenues of the district arising from any and all sources, and *all* real estate subject to taxation in the district, *is by this act pledged,*" and by the provision in section 19 that "*all* bonds issued under this act shall be secured by a lien on all lands and real property in the district." The bonds issued on October 1, 1914, in compliance with all requirements of the act, became the first valid and subsisting obligations of the district, and a first lien on all

of its resources, not only because of the above pledges but also because the second bonds had not then been issued.

The fundamental rule in construing statutes is to ascertain and give effect to the legislative intent. 117 Ark. 606; 86 *Id.* 368, 385; 36 Cyc. 1106. Every part must be construed together. 102 Ark. 205; 11 *Id.* 44; 22 *Id.* 369. It must be considered as a whole. 115 Ark. 194; 116 Ark. 538. Each word and phrase should be given effect. 99 Ark. 149.

2. The construction contended for by appellee involves the act in contradictory and impossible provisions. Section 16 of the act pledges all uncollected assessments for the payment of the first bonds, and, likewise, section 18 pledges the entire revenues of the district and all real estate for the payment of the first bonds, and these pledges were fulfilled from October 1, 1914, to May 10, 1915. If *all* uncollected assessments and the entire revenues and all real estate in the district, in truth and in fact be pledged by this act to the payment of the second bonds, the original pledge for the payment of the first bonds is destroyed, leaves the first bonds unsecured and the second bonds with all the security.

Appellee's contention is also inequitable and unreasonable. The first bonds met the original requirements of the district. The money was advanced upon the solemn pledges both of the district and of the act itself that the loan was secured by first lien on all the resources of the district and had undisputed priority of payment, and that the district would not thereafter do or suffer any act to be done that would impair or defeat such securities or priority. To give subsequent bonds equal priority in securities absolutely pledged for the first bonds eight months before the later bonds were issued would work an inequitable loss and hardship upon the first bondholders. Even if the equities were equal, the maxim *"Qui prior est tempore potior est jure"* should prevail in appellant's favor. 89 Ark. 378; 22 *Id.* 369; 104 *Id.*

583; 91 *Id.* 5; 35 *Id.* 56, 61; 10 *Id.* 516, 524; 130 N. E. 827; 129 N. E. 500; 105 S. E. 7; 185 N. Y. S. 267; 229 N. Y. 277. The construction contended for by appellee would impair, divert and destroy vested rights of the appellants. 203 Ala. 401.

*James B. McDonough,* for appellee.

1. If it is the law that the second issue of bonds has a prior right, then the purchasers of the first issue bought with knowledge that the prior right existed, and the purchasers of the second bonds bought with the understanding that they had the superior right. The statute itself does not in words attempt to create any priority between the two issues. The district was authorized to issue bonds up to $31,000, and the second issue is not made inferior to the first in any way. We think, however, that the second issue is prior in equity and in law to the first issue. It is a lien (the assessment of benefits), fixed by law,—not a contract lien. In all liens such as taxes and assessments created by law, the later lien is superior. 182 Pac. 422; 191 Pac. 954; 20 Cyc. 1202; 175 S. W. 972; 120 Minn. 172.

2. If the foregoing contention is not correct, then we contend that there is no priority, as in the statute authorizing the issuing of the bonds there is no priority. The only limit fixed by the Legislature as to the amount of bonds to be issued was the 30 per cent. of the value of the property referred to in the act. There is, in reality, no "first" and "second" bonds in the sense employed by appellants. The purchaser of the bonds dated October 1, 1914, knew that bonds were authorized up to $31,000. All the provisions of the act, including sections 16, 18 and 19, pledged all the revenues for the issue of bonds dated May 1, 1915.

If appellants are right in saying that the concluding portion of section 19 with reference to default in payment and proceedings upon the appointment of a receiver is a mere distribution clause and does not establish any equality among the bonds, then the junior bonds must

be paid first, its past due interest and its past due bonds. If there is anything left after these bonds are paid, then the appellants' past due bond must be construed. If this is not the true construction of the act, then it means that all past due bonds must be paid *pro rata.* If the Legislature, knowing the rule as to priority between senior and junior bonds, had intended to apply a different rule, it would have expressed that intention in the act; hence it either intended that all past-due bonds should be paid *pro rata,* or that the rule of law on the subject as to priority of the junior bonds should be applied.

3. Upon the findings of the court in the motion and upon the presumptions arising on the record, appellee is entitled to a decree ordering its past-due bonds and coupons to be paid first.

Appellants introduced no testimony tending to show that they have any superior right or lien. The decree, therefore, against them on that point will be presumed to be correct. 141 Ark. 369; 146 *Id.* 232; 129 *Id.* 193; 139 *Id.* 408; 144 *Id.* 436.

4. This court has already upheld the validity of this statute. 112 Ark. 101. See also 92 Ark. 93; 102 *Id.* 553; 146 *Id.* 417.

*N. F. Lamb* and *Chas. D. Frierson,* representing certain drainage district bondholders, filed a brief as *amici curiae,* contending, in substance that priority in time gives priority in right among successive special assessment liens. 12 Wheat. 177; 6 L. ed. 592; 101 U. S. 837; 25 L. ed. 1081; 17 R. C. L., Liens, § 19, p. 610; 25 Cyc. 678; 2 Pom. Eq. Jur. 4th Ed. §§ 678-679. Counsel discuss the statutory provisions in chap. 109 C. & M. Digest, and cite further in support of the foregoing contention, 79 N. W. 77; 27 Pac. 52; 67 Pa. St. 345; 129 S. W. 1031; 83 So. 170; 2 Black 448; 67 U. S. 448; 17 L. ed. 327; 67 S. E. 294; 88 Pac. 722; 10 L. R. A. (N. S.) 110; 198 Fed. 557; 117 U. S. 657; 29 L. ed. 1026. Intention to establish priority of special assessments over other liens and of

special assessments as between successive issues thereof may be gathered from the whole act, even though not expressly declared. 25 R. C. L. 188-189. See notes to 30 L. R. A. (N. S.) 767; 35 L. R. A. 372; Ann. Cases 1913-C, p. 1210.

*Cockrill & Armistead* and *Charles Claflin Allen Jr.*, representing certain nonresident levee district bond-holders, filed a brief as *amici curiae.*

Appellants' bonds contain a contractual pledge of a first lien, in apt and emphatic language, viz: "For the faithful performance of all covenants, recitals and stipulations herein contained, for the proper application of the proceeds of the tax assessment of benefits heretofore or hereafter levied, and for the faithful performance in due time and manner of every official act required and necessary for the prompt payment of the principal and interest of this bond as the same shall mature, the full faith, credit and resources of said road district are hereby irrevocably pledged." These bonds were then, necessarily, first mortgage bonds. The second bonds and pledge were executed seven months, and the pledge filed for record nearly three years, after the first, and recited the previous bond issue. Identical formal proceedings were had by the commissioners prior to the issuance both of the first and second bonds, authorizing the issuance of the bonds and pledge and levying an assessment of benefits, the only difference being a recital and recognition in the second proceedings, bonds and pledge of the first series of bonds. The recitals of the bonds make out a *prima facie* case of the truthfulness of the facts recited. 28 Cyc. 1627; 80 Ark. 462. The district thus issued a series of first bonds which became, by virtue of the act under which the district was formed, a first lien on the property and revenues of the district. This being true, no action of the district could subordinate the first lien of those bonds. 2 Black (U. S.) 448.

McCulloch, C. J. Road Improvement District No. 5 of Pulaski County was formed under a special statute

(Acts 1909, p. 1151) for the purpose of improving a certain road. The statute authorized a levy of special taxes on assessed benefits for the purpose of paying for the improvement, and also authorized the commissioners to "borrow money not exceeding the estimated cost of the work, at a rate of interest not exceeding ten per centum per annum," and to issue negotiable bonds for the discharge of liabilities created under the contract for constructing the improvement. The cost of the construction of the improvement and the creation of liabilities of the district therefor were limited by the statute to thirty per centum of the total assessed value of the real property in the district.

The statute contains the following provisions with reference to pledging the revenues of the district for the payment of the bonds:

"Section 18. That, for the payment of both principal and interest of the bonds to be issued under the provisions of this act, the entire revenues of the district, arising from any and all sources, and all real estate subject to taxation in the district is by this act pledged, and the board of directors are hereby required to set aside annually from the first revenues collected from any source whatever a sufficient amount to secure and pay the interest on said bonds, and said board shall also make due provisions for the payment of the principal thereof as the same shall become due.  .

"Section 19. All bonds issued under this act shall be secured by a lien on all lands and real property in the district, and the board of directors shall annually cause the assessment to be made and the tax levied and collected under the provisions of this act, so long as it may be necessary to pay any bonds issued or obligations contracted under its authority; and the making of said assessment or levy may be enforced by mandamus. If any bond or any interest coupon of any bond issued by said board is not paid within thirty days after its maturity, it shall be the duty of the chancery court of the proper

county, on the application of any holder of such bond or interest coupon so overdue, to appoint a receiver to collect the assessment aforesaid, and an assessor who shall make an assessment of said property; and the proceeds of such assessment and collection shall be applied, after the payment of the costs, first to the overdue interest, and then to the payment *pro rata* of all bonds issued by the said board which are then due and payable; and the said receiver may be directed by suit to foreclose the lien of said assessment on said property, and any suit so brought by the receiver shall be conducted in all matters as a suit by the directors, as hereinbefore provided, and with like effect, and the decrees and deeds therein shall have the same presumptions in their favor; provided, however, that when all such sums have been paid the receiver shall be discharged and the affairs of the district conducted by the board of directors as hereinbefore provided.''

It is further provided in the statute that, on default in the payment of any matured bond or bonds, a receiver may be appointed for the purpose of collecting the assessments until a sufficient sum is realized to pay the matured bonds.

The assessed value of the property in the district is shown in the present litigation to be the sum of $104,-985, therefore the statutory limit upon the amount of the bond issue restricts the issuance of bonds to the sum of $31,495.50. There was a total issue of bonds in the sum of $28,500, and upon default in the payment of some of the bonds and interest, a receiver was appointed, pursuant to the terms of the statute, and a fund was collected by him, and the distribution of that fund is the point at issue in the present litigation.

All of the bonds were issued and sold for the purpose of paying for the construction of the improvement, but all the bonds were not sold at the same time. Bonds aggregating the sum of $20,000 were issued and sold on October 1, 1914, and these bonds are owned by appellant;

the remainder of the bonds, aggregating $8,500, were issued and sold on May 1, 1915, and are owned by appellee. The respective holders of the bonds are each claiming priority, and the question involved in the case is whether or not the fund in the hands of the receiver is to be distributed *pro rata,* or whether either of the parties is entitled to priority.

The chancellor decreed that all of the accrued interest should first be paid in full, and that the remainder of the fund should then be distributed *pro rata* upon all of the matured bonds held by the parties.

It is not shown that the funds now in the hands of the receiver constitute the last collection that can be made of taxes, nor is it shown that taxes to be collected in the future will be insufficient to pay off the bonds in full. In other words, the controversy narrows down to the question of priority in the distribution of the particular funds now in the hands of the receiver.

It will also be noted that there was no excess of authority in the issuance of the bonds, for the total amount issued at both of the times mentioned was below the aggregate amount authorized by the statute.

It is contended by counsel for appellants that the case presents an instance of successive bond issues under a statute which provides that the revenue shall be pledged to the payment of the bonds, and that this necessarily creates priority in favor of the holders of the first of such successive issues of bonds. Counsel for appellees contends, on the other hand, that, if the court was not correct in the decision that there was no priority between the different bondholders, and, if there was any right of priority at all between them, the preference is in favor of the holders of the last issue of bonds.

We think that counsel on each side are mistaken in assuming that there were successive bond issues within the meaning of the statute. There was, in legal contemplation, only one issue of bonds, though the total amount issued was in two allotments, made at different times.

The statute provides that all bonds issued thereunder "shall be secured by a lien on all lands and real property in the district," and it makes no mention of any priority. The power to issue bonds is, however, limited to the sole purpose of raising money for constructing the improvement. It must be, and is, conceded that it is the statute itself which creates the lien upon the revenues of the district, and not the writings which evidence the obligations. The fact therefore that the bonds themselves contain a stipulation that the revenues of the district were pledged to the discharge of the obligation adds nothing to the rights of the parties, and, since the statute creates the lien, it can only be interpreted to mean that the lien is created, without priority, in favor of all the bonds issued for the purpose named. The fact that they were issued successively in point of time does not alter the relative rights of the bondholders, for each of the holder's derives his right to a lien from the statute itself. The pledge of the revenues declared by the statute may be likened in some respects to a mortage executed to secure numerous debts maturing at different times, and this court has held that under such a security there is no priority between holders of the different debts on account of priority in point of time of the assignment to separate parties of the different obligations. *Penzel* v. *Brookmire*, 51 Ark. 105. In that case the debtor executed a series of notes and a mortgage to secure all of them, and the mortgagee transferred the notes to different parties, and a controversy arose as to the priority under the successive assignments. Judge BATTLE, in delivering the opinion of the court, called attention to conflict in the authorities, which he divided into three classes: one holding that the notes should be paid in the order of their assignment; another class holding that the notes should take precedence in the order of maturity, and the third class holding that the proceeds of the sale of the mortgaged property should be applied *pro rata* in part payment of the several notes, irrespective of dates of ma-

turity or assignment. The court approved the view taken by the class of authorities cited last, and in disposing of the question it was said:

"The comparison of a mortgage given to secure several notes to successive mortgages given to secure each of them does not support the doctrine it is made to prove. To make the case analogous, the mortgages to secure each note must bear the same date, and be executed, delivered and filed for record, and recorded, at the same time, and the property mortgaged must be the same. In the latter case the mortgages would be concurrent; neither one would have preference over the others, and all would have equal claims to be paid ratably out of the property mortgaged. If one should be transferred to a third party, it would not thereby become paramount to the others, but all would stand on an equality. Hence the comparison does not sustain the doctrine that the notes, while in the hands of different persons, are entitled to priority of payment according to the order in which they mature. We do not think that either of the doctrines laid down by the two classes of decisions first mentioned is sustained by reason or equity. The notes are secured by one mortgage executed for the equal benefit of all. * * * * * There can be no priority of rights in favor of one against the others, as the mortgage is one."

The facts of that case are, of course, different from the facts in the present case, but the principle is the same, for we hold that the statute creates the lien, and only one lien, and that for the security of all the bonds issued under that particular authority—not part of them, but all of them. The decision is limited to the particular facts of this case, and reaches no further. We have no case of successive bond issues in the sense that bonds were issued at different times under different authority, nor have we a case of overlapping districts where there is a question of priority in assessment liens. We reiterate that in this case all of the bonds issued were within

the single authority conferred, and we hold that they are tantamount to a single issue, even though actually successive in point of time.

The question is one of first impression in this State. Indeed, it seems not to have been decided elsewhere, so far as we are able to discover. Counsel for the respective parties, as well as the other interested counsel who have filed briefs as *amici curiae,* have not brought to our attention a single case in point on the question involved in this particular controversy. The only case which might appear to be in point is *First National Bank* v. *Terry, Briggs & Co.,* 203 Ala. 401, and an analysis of the decision will show that it has very little bearing on the particular point involved in the present case. In that case there was a levy by the county of special taxes pursuant to authority of the Constitution to raise a fund annually to pay for the construction, by the county, of certain local improvements, and where there were several contracts let during the same year for different improvements it was decided that the contractors were entitled to priority in point of time for the payment of the amount due out of the funds levied for that purpose. It could only have been held, and was held, to be a case of successive contracts for payment out of the same fund, and of course, when the funds were insufficient, they necessarily must be applied on the first obligations contracted, pursuant to the Constitution and the statute. We have no such case here, for the bonds in the present case were all issued, not only under the same authority, but for the same purpose.

The other cases cited by counsel are not in point, for they all relate either to the question of priority of liens of the assessments of different taxing districts, as in the California, Missouri and Iowa cases cited; or to the question of priority where there has been creation of obligations in excess of the authority granted by law, as in the Federal cases cited; or to the question of priority

of special assessment liens over other securities, such as antecedent mortgages.

Our conclusion is therefore, after interpreting our statute to confer a single lien for the whole bond issue, there is no priority of the holders of bonds issued at different times, and that the chancellor was correct in his conclusion to that effect. Under this view of the statute, where there is authority for the issuance of bonds up to a certain amount for a given purpose, the purchasers of the bonds first delivered must take notice of the fact that there may be other bonds issued for the same purpose, standing upon an equality with those then issued; and subsequent purchasers of bonds must take notice that there may have been prior deliveries of bonds under the same authority.

The decree of the chancery court is therefore affirmed.