BOARD OF COMMISSIONERS OF MCKINNEY BAYOU DRAINAGE DISTRICT *v.* BOARD OF DIRECTORS OF GARLAND LEVEE DISTRICT.

Opinion delivered May 19, 1930.

*H. M. Barney* and *W. H. Arnold,* for appellants.

*Henry Moore, Jr.,* for appellee.

McHANEY, J. The principal question presented by this appeal, if not the only one, is that of priority of liens, if any, for taxes on assessed benefits or betterments in overlapping improvement districts, organized by legislative authority at different times, and under different acts of the Legislature. Appellants will hereafter be referred to as the drainage district and appellee as the levee district.

The levee district was created by Special Act 311, Acts of 1913, p. 1267, and the provisions thereof were re-enacted, and the district validated by Special Act 56, Acts 1917, p. 235. Additional bonds were authorized by Act 451, Acts 1921, p. 944, and by Act 516, Acts 1923, p. 1113. The validity of the levee district was sustained by this court in *Dorsey Land & Lumber Co.* v. *Board of Directors, Garland Levee Dist.,* 136 Ark. 524, 203 S. W. 33.

The drainage district was created by order of the county court of Miller County, Arkansas, on May 4, 1923, under and by virtue of the provisions of the general drainage district laws, known as the alternative system, § 3607 *et seq.* C. & M. Digest of the Statutes of this State.

The levee district, prior to the organization of the drainage district, had issued bonds in the sum of $267,500, of which amount $150,000 are still outstanding. A levee was built along the west bank of Red River, connecting with another levee on the north, and running southerly to McKinney Bayou, near the hills, but left a gap between the south end and the hills of about one-fourth mile. About 45,000 acres of land are in the levee district. The

drainage district is composed of the south two-thirds of the lands in the levee district, about 30,000 acres, and was organized to supplement the work of the levee district by building a levee along the bank of McKinney Bayou, in a southeasterly direction, and connecting with the south end of the levee built by the levee district, which protected the lands in both districts from overflow through the gap heretofore referred to. Ditches were also constructed to drain off the surface water, and flood gates constructed to let the water through to the bayou. Improvements made in the drainage district cost approximately $450,000, and large bond issues are now outstanding. Having defaulted in the payment of bonds, it is now in the hands of a receiver. The levee district is also in default.

Certain of the levee district taxes for 1926 not having been paid, it brought suit to collect same. Decree of foreclosure was had in July, 1928, and the delinquent lands ordered sold by a commissioner appointed for the purpose. The commissioner reported on July 28, 1928, that he had advertised said delinquent lands for sale, had publicly offered same, but that, although parties were present, "No one offered to purchase for the levee taxes subject to the lien of the existing drainage district taxes in favor of McKinney Bayou Drainage District, and your commissioner, in accordance with § 3646 of Crawford & Moses' Digest, reports the above facts to the court that the court may take proper action thereon." At the suggestion of the levee district, an attorney *ad litem* was appointed to notify the drainage district, its receiver and the trustee for its bondholders that it was the intention of the levee district to proceed further in said suit according to the provisions of § 3646, C. & M. Digest. Thereafter the drainage district and the trustee for bondholders were made parties to the suit to foreclose. An order was sought directing a sale of the lands for the delinquent levee tax for 1926, free from the lien of the drainage district assessments, but subject to future taxes

in the levee district. Appellants opposed the procedure, and contested the right of the levee district to a superior lien on any grounds, but on a trial the court held with appellee that its lien was superior to that of the drainage district, and again ordered the land sold for delinquent levee taxes for 1926, but free of incumbrances of the assessment of benefits and drainage tax of appellant district, but subject only to subsequent installments of benefits in the levee district, in accordance with the court's view of the proper construction to be placed on § 3646, C. & M. Digest. This appeal followed.

Said section of the statute is as follows: "On sales of land condemned to be sold for the taxes of drainage districts, and other improvement districts in this State, the land shall first be offered subject to the lien of all improvement district assessments then existing thereon. If no one will purchase on those terms, the commissioner appointed to make the sale shall report that fact to the court, and the land shall not again be offered for sale until after the lapse of one year, nor until an attorney *ad litem* has been appointed to notify the commissioners or directors of other improvement districts, and the trustees of all bondholders having liens thereon that said lands have been offered for sale on those terms, and that no purchaser therefor has been found. Upon the coming in of the report of such attorney *ad litem,* showing in detail the notice that he has given to the commissioners or directors of other improvement districts having liens upon the property, and to the trustees of the bondholders of all districts having liens on the property, the court shall make an order for the sale of the lands free of incumbrances of the assessments of all other improvement districts that are subordinate to the lien that is foreclosed, but subject to subsequent installments of the assessments of benefits in the plaintiff district. And when such sale is made, any balance that may remain after paying the cost of foreclosure and the amount of the lien that is foreclosed shall be distributed by the court in

such manner as may be found equitable. If the board of commissioners or directors of any drainage district having a lien on the lands, or the trustee of any bondholders having such lien is not notified of the application for such sale, they may, on motion at any time within three years have the sale set aside and the lands resold.''

It becomes necessary to determine the meaning of said section. We have never had the exact question as now presented before us heretofore, and this court has never been called upon in any other case to construe this section of the Act of 1913 (§ 14, Acts 1913, p. 738). It was evidently enacted to cure a defect in the drainage district law, and its provisions were made broad enough to include all other improvement districts which overlap each other, such as the case now before us. Many such districts were in existence at the time of the passage of said act, and many more have been created since, all of which have assessments of benefits with annual taxes thereon to retire bonds issued to pay the cost thereof. If the construction placed on this statute by the learned trial court is correct, that is, that the first district in point of time has the prior and paramount lien, and that, by following the procedure outlined in said statute, it is entitled to an order of court directing a sale of delinquent land in the prior district free of all assessment of benefits in subsequent districts and taxes levied thereon, it is easy to see that the consequences to the subsequent district will be disastrous. Let us now examine the statute to see if the Legislature meant to entail such consequences on subsequent districts. The first sentence in said section is: ''On sales of land condemned to be sold for the taxes of drainage districts and other improvement districts in this State the land shall first be offered subject to the lien of all improvement district assessments then existing thereon.'' Manifestly, the land cannot be sold for taxes that are not due, but only for delinquent taxes. So, when the land is offered for sale at the first sale provided for in said section, it is offered ''subject to

the lien of all improvement district assessments then existing thereon.'' In other words, if there be a purchaser at such sale he buys with the understanding that he will have to pay all accrued taxes in other districts, and subject to the taxes for which liens will accrue in the future in all districts. But if there be no purchaser at such sale, and the procedure is resorted to as provided in said section, then the statute further provides that ''the court shall make an order for the sale of the land free of incumbrances of the assessments of all other improvement districts that are subordinate to the lien that is foreclosed, but subject to subsequent installments of the assessment of benefits in the plaintiff district.'' We are of the opinion that the lawmakers meant accrued assessments, and that they did not intend to destroy or free the land of the lien of subsequent installments of the assessment of benefits in subsequent districts, but free of the lien of taxes that have already accrued in subsequent districts. In other words, the levee district, being prior in point of time, by following the procedure set out in said section, may sell the land for delinquent taxes due it free of the lien for accrued taxes in the drainage district; its lien being ''subordinate'' only to this extent.

Nor do we think either district has any priority of lien over the other, except as stated above. Both districts are created by virtue of legislative authority. Both are State agencies. Each is authorized to construct certain improvements by issuing bonds to pay therefor, and to levy a tax on assessed benefits to pay the bonds and the interest thereon. The act creating the levee district provides that an annual tax shall be levied upon the real estate in the district not to exceed 10 per cent. of the assessed valuation as it appears upon the real estate assessment books. Section 7 gives the taxes so assessed, and the tax lists the effect of a *bona fide* mortgage for a valuable consideration, and a first lien on all the lands, as against all persons having any interest therein. Another section pledges the taxes to be collected in the future to

the payment of the bonds and interest. The validating act of 1917 provided in § 35 that "this act shall be liberally construed so as to make the lien of said assessment valid, and prior to all other liens." The effect of these various provisions was to give the levee district a lien for taxes. In the drainage district, by § 3617, C. & M. Digest, the county court is required to enter an order on its records, having "all the force of a judgment, providing that there shall be assessed upon the real property of the district a tax sufficient to pay the estimated cost of the improvement, with ten per cent. added for unforseen contingencies," payable in annual installments. "The tax so levied shall be a lien upon all the real property of the district, from the time that same is levied by the county court, and shall be entitled to preference over all demands, executions, encumbrances or lien whatsoever created, and shall continue until such assessment  *  *  * shall have been paid." So it will be seen that the act under which each district was created gives a lien which is entitled to preference over all contract liens, or liens that are acquired by virtue of contractual relations between individuals, persons or private corporations. The statute does not mean that such liens shall be superior to the State's lien for taxes. Nor does the State's superior lien for taxes extinguish improvement district taxes on forfeiture and sale to the State. While the title rests in the State, the tax-lien in improvement districts is merely suspended, and, on redemption from the State, accrued improvement district taxes must be paid, as well as accrued State and county taxes. Section 2, Act 261 of 1925, p. 781; *Turley* v. *St. Francis County Rd. Imp. Dist. No. 4,* 171 Ark. 939, 287 S. W. 196; *Wyatt* v. *Beard,* 179 Ark. 305. This act 261 of 1925 tends very strongly to show that the Legislature did not intend to give priority of assessment liens in improvement districts, but to place them all on a parity. The decision in the Turley case *supra* further supports the same view, where the court said that "the lawmakers, in the exercise of their au-

thority, have provided for coordinate enforcement of liens of the State for general taxes, and improvement districts in recognition of the continuation of both liens." It was there further said, with reference to the act above mentioned: "This statute is well within the legislative power, as we have already seen, for it does not amount to an exemption from taxation, or to relinquishment of the State's lien, but merely operates as a continuation of the coordinate lien of one of the State's agencies, and establishes a method of preserving each one of the liens without extinguishing the other. That statute, of course, has no application to the present litigation, for it was enacted after the liens were acquired, and after appellants had purchased the land in controversy from the State. But we think that the other statute quoted above (C. & M. Dig., § 5433) is equally potential in continuing the lien of the improvement district, and in preventing its extinguishment by a sale for general taxes. The words 'all demands, executions, incumbrances or liens whatsoever created,' have no reference to the State's paramount lien for taxes. But the words which follow unmistakably carry the meaning that the special taxes of the improvement district shall continue until fully paid, and are not extinguished. Of course, the forfeiture to the State of lands for general taxes necessarily suspends the enforcement of the special tax lien as long as the title remains in the State, but as the lien, under the terms of the statute, is not extinguished, and continues until the special taxes are paid, the same can be enforced when the land goes back into private ownership. This construction of the statute gives full recognition to the State's paramount right of taxation, and in nowise detracts from the dignity and power of the State as against subordinate agencies."

If a sale of lands, under the paramount lien of the State for delinquent taxes does not extinguish the inferior or subordinate liens of improvement districts, it necessarily follows, we believe, that a sale for delinquent

taxes in an improvement district that is prior only in that it was first created would not extinguish the lien of another district subsequently created by the State. This view seems to be strengthened somewhat by the decision of this court in *Hoehler* v. *W. B. Worthen Co.*, 154 Ark. 444, 243 S. W. 822, although the question now presented was not before the court in that case.

There are holdings by some courts in other States that the improvement district first created has the prior lien, while in others it is held that the last created has the prior lien. But, as we see it, great confusion will result from either holding. No doubt the Legislature has the power to provide that the one or the other is prior, but, until it has done so in plain and unmistakable language, we do not feel that we should so hold. Furthermore, the view we now take is just and equitable. It is conceded that the levee district without the drainage district failed to accomplish the purpose of its creation. It is likewise true that the drainage district without the levee district would be practically useless. Each therefore is complementary to the other. It would therefore appear to be unfair and inequitable for either lien for taxes to be held to be prior to the other, except as indicated herein, unless the Legislature has made it so in plain and unmistakable language, and we do not think it has done so. The acts under which both districts were created provide that each lien shall be superior to all other liens, but, as we have already shown, such liens are not superior to the State's lien for taxes, and are only superior to contract liens. The declaration in the third sentence of § 3646 that at the second sale the land shall be sold "free of the incumbrances of the assessments of all other improvement districts *that are subordinate* to the lien that is foreclosed, but subject to subsequent installments of the assessments of benefits of the plaintiff district," fails to define which is the "subordinate" district, and the clause beginning with "but" does not add anything to enlighten us, and it is merely declaratory of the common law. This statute

therefore has no application except to accrued assessments, or taxes that are due.

This construction of the statute under consideration disposes of all the questions raised by this appeal. The result is that the decree must be reversed and remanded with directions to order a sale of the delinquent land of the levee district involved in this action free from the lien of accrued taxes in the drainage district. It is so ordered.

HART, C. J., KIRBY and MEHAFFY, JJ., dissent.