PERSON v. DAVIS.

4-5779                                            138 S. W. 2d 71

Opinion delivered February 19, 1940.

*L. K. Person,* for appellant.

*Willis B. Smith* and *Ben E. Carter,* for appellee.

GRIFFIN SMITH, C. J. Jim Davis died intestate in 1924, leaving a widow, Ann, and two daughters, Easter and Mattie.

By a decree of the Miller chancery court the widow's dower and homestead were assigned in 1925. The widow was the second wife of Jim Davis, and therefore the step-mother of Easter and Mattie. In 1931 she married Andrew Mitchell. Her death occurred in February, 1938.

In December, 1938, Easter Davis filed suit for partition of all the lands owned by her father at the time of his death.

The complaint recited that Mrs. C. W. Person, by virtue of a state tax deed of March 3, 1936, claimed an interest ''. . . in Plat B SE¼ Sec. 19, 14.14 acres; Plat A N½ Sec. 20, 53.83 acres; Plat A SW¼ Sec. 20, 41 acres [all in township 17 south, range 25 west'']''.

Mattie Davis was made a defendant, with others. Mrs. Person demurred on the ground that the plaintiff had not offered to repay tax moneys. The demurrer was overruled.

In her separate answer Mrs. Person admitted that Mattie Davis and her daughter, Rosie, and Arthur Mc-Kenzie and his wife, were residing on the lands, but alleged that their occupancy was under a rental contract executed by Mrs. Person; that during the preceding spring Easter Davis lived on a part of the Jim Davis land ''outside of levee protection''; that during high water Mrs. Person permitted Easter to move into a house ''. . . located on part of said land belonging

to her where she has since resided, despite the fact that Mrs. Person has twice given her written notice to move.''

·  ·It was then stated that averments in Easter Davis' complaint constituted the first assertion by either of the heirs that Mrs. Person had not acquired title by adverse possession, the possession, as it was alleged, having begun in 1929.

Mrs. Person further claimed that she purchased of McKinney Bayou Drainage District its title in 1929; that she afterwards ''.  .  .  purchased and kept paid up other tax titles and liens on said lands—levee, county, and state—and entered into possession on said lands claimed by her in the year 1929. Mrs. Person's possession and notice to said heirs [was] so complete that off and on since the year 1930 she has rented parts of said lands to said heirs and [has] collected rent from the said heirs.''

The fourth paragraph of the answer is: ''Mrs. Person does not claim all of said land either by deed or adverse possession. The proof will show the land claimed by her. She is not interested in paying any part of surveyor's expense in establishing said lines so as to correct description thereof. She has no objection to plaintiff's so doing. Apparently plaintiff is including land herein that this defendant claims no interest in.''

The decree of 1925 partitioning the Jim Davis lands described two tracts by metes and bounds—14.14 acres (more or less) in section 19, township 17 south, range 25 west, and 153.17 acres (more or less) in section 20, same township and range. The two tracts contained 167.17 acres—''more or less.''

From the total acreage the decree carved two estates: the homestead, described by metes and bounds, containing 78.1 acres, and the dower, containing 37.50 acres. Lands assigned to Easter and Mattie Davis, free from the rights of Ann Davis, were likewise described by metes and bounds, and amounted to 51.7 acres.

Andrew Mitchell testified that when he married Ann Davis in 1931 Ann was in possession of a 63-acre

tract; that he worked the land that year and "put up all the hands"; that the "hands" referred to worked on the halves; that no rent was paid by them, or by himself, or by his wife, to Mrs. Person; that Mrs. Person took possession of the property in 1932; that the land was "inside" the levee; that to the north Mattie and Easter Davis had some land both inside and outside the levee.

Mattie Davis testified that when the land was partitioned in 1925 Ann Davis got the south end of the place, and the north end went to the heirs. There was testimony on behalf of appellant that the witnesses had attorned to Mrs. Person prior to 1932.

H. M. Barney testified that McKinney Bayou Drainage District foreclosed certain tax liens and purchased the lands as to which the betterments were delinquent. In 1936 Mrs. Person purchased ". . . Part fractional section 20, township 17 south, range 25 west, and Plat B NW¼, same section, township and range. One of the tracts contained 31 acres, the other 56.09." The witness said that Mrs. Person paid the delinquent taxes, penalty, interest, and cost, for the years 1931 to 1935, both inclusive.

Barney further testified that in 1929 Mrs. Person bought at a foreclosure sale ". . . which was a judicial sale, part fractional, section 20, township 17 south, range 25 west. A certificate of sale was made to her. Later we tried to correct the description. . . . I gave the deed to the land that is described on the tax record. However, the deed I gave in 1936 contained additional lands. It covered the E. M. Davis tract, which is plat B NW¼ of section 20, township 17 south, range 25 west."

Over objections of the plaintiff, the deed of C. M. Blocker as receiver of the drainage district was introduced. It contained the recital that ". . . the part fractional, and the plat B northwest quarter of section 20, township 17 south, range 25 west, in Miller county, Arkansas [were returned delinquent for the taxes for 1931 to 1935, inclusive, and were purchased by Mrs.

Charline W. Person"]. The deed was dated November 20, 1936.

On cross-examination Mr. Barney stated that he was testifying from the original tax book of the district used by the collector; that on page 4 the period from 1924 to 1928 was covered; that in section 20, township 17 south, range 25 west the Pete Davis estate was described as ". . . fractional section 20," etc., and that for the E. M. Davis tract the description was "Plat B NW¼," etc. Descriptions for other years were similarly indefinite. The "Plat B NW¼" showed 31 acres. In other tracts in section 20 taxes on five acres were charged to "Jordan," and ". . . the others are in pencil." The pencil notations were not on the book when it went to the collector—"They were put there in the handwriting of the auditor of the district. The acreage wasn't listed at the time of the sale."

There are several pages of testimony relating to descriptions.

Deed to forfeited land sold to the state, dated March 3, 1936, was introduced. It evidenced purchase by Mrs. Person of "Parts of section: Plot B SE¼, section 19, township 17 south, range 25 west, containing 14.14 acres forfeited in 1932; plot A N½, section 20, township 17 south, range 25 west, containing 53.83 acres, forfeited in 1932, and plot A SW¼, section 20, township 17 south, range 25 west, containing 41 acres, forfeited in 1931."

L. Jean Cook testified that he had been in the abstract business in Miller county since 1922. Was familiar with county records, having investigated them as far back as 1905. Had made a search to ascertain if a map had been recorded designating lands in "Plat A and Plat B." Found no record of such map.

Henry Moore, Jr., testified that Judge Richard Mann was attorney for the district when it was organized, with C. S. Christian as engineer. Christian did not make the original surveys. Maps were made showing the levee line and the hill line. To distinguish the lands "inside" and "outside" the levee Mr. Christian prepared Plat A

and Plat B, one showing the land inside the levee and the other showing lands outside the levee.

The drainage district was created by order of the Miller county court May 4, 1923, under provisions of the general drainage district laws, known as the alternative system. [See *Board of Commissioners of McKinney Bayou Drainage District* v. *Board of Commissioners of Garland Levee District,* 181 Ark. 898, 28 S. W. 2d 721].

The statutory procedure governing assessments, confirmations, etc., in effect when the drainage district was created, appears as § 3615 of Crawford & Moses' Digest (since amended), and required the district's commissioners to ": . . subscribe said assessment and deposit it with the county clerk, where it shall be kept and preserved as a public record." The purpose of the law was to have all property against which betterments had been levied appropriately described.

Section 3618 provided for annual collection of taxes, the assessments to be extended upon the tax books of the county and collected by the collector of the county, along with other taxes. Methods for enforcing payment were set out in § 3631 of Crawford & Moses' Digest (now § 4482 of Pope's Digest), one requirement being that ". . . a descriptive list of said lands" shall be published.

The district, in its creation and subsequent administration, was represented by excellent legal talent who would not have overlooked fundamentals or details essential to its validity of assessments and the collection of amounts annually due. In the instant case, however, appellant did not require that her evidences of purchase reflect facts sufficient to identify the acreage she expected to buy. The descriptions being insufficient, the deeds did not convey title. Likewise, the state deed was vague. *Sutton* v. *Lee,* 181 Ark. 914, 28 S. W. 2d 697. In the Sutton Case it was held that the deed was void "because it described nothing." That is true here.

In her answer Mrs. Person disclaimed title to part of the land, the admission being that she was not en-

titled to the full acreage "either by deed or adverse possession." She thought the proof would show what land came within the descriptions upon which she relied. It did not.

The decree is affirmed.