WORD, RECEIVER, *v.* GRIGSBY.

4-7105                                         174 S. W. 2d 439

Opinion delivered October 11, 1943.

A. F. Barham, for appellant.

Wils Davis, S. L. Gladish and Taylor & Taylor, for appellee.

McFADDEN, J. This suit was originally filed against appellant by three individuals; but Mrs. Bess Grigsby is not now involved; and we herein refer to S. L. Gladish and D. F. Taylor as "the appellees," who are and were at all times herein mentioned the owners of the west 100 feet of lots 4 and 5, block 12, Townsite Addition to Osceola. This property was embraced in Sewer District No. 5 of Osceola, Arkansas, which district was created sometime prior to 1930 and went into receivership about 1935; and the appellant is the receiver of the said district. In 1935, there was duly rendered a foreclosure decree against appellees' property for the delinquent 1930 assessment of $40 and for penalty, etc. The district (its

receiver) bought the property at the foreclosure sale for the amount of the assessment and penalty.

The City of Osceola, Arkansas, owns and operates its own electric plant; and the city agreed that if property holders in the district would pay all delinquent assessments, penalty and interest to and including 1938, the city would relieve the property of all improvement assessments maturing after 1938. A ''drive'' was put on to induce property holders to pay; and accordingly appellees, on November 8, 1939, paid the receiver $40 as the 1930 assessment (sometimes erroneously referred to as ''tax''), and agreed to pay, in a short time, the other delinquent improvement assessments on the property for the years subsequent to 1930. When the appellees failed to pay for these subsequent years, the receiver, in December, 1939, sought to return the $40 to the appellees (which appellees all the time have refused); and in March, 1941, the receiver obtained a decree from the chancery court authorizing her to sell, on June 13, 1941, all property owned by the district. The appellees filed this present suit on June 11, 1941, in the chancery court, to perpetually enjoin the receiver from selling their property, claiming that the property owed no delinquent assessments and that it had never been sold to the district.

There followed a series of hearings, orders and decrees in the chancery court. A decree was entered on September 21, 1942, permanently enjoining the receiver from selling the property; then an order was entered December 28, 1942, setting aside the September decree; then another decree was entered March 13, 1943, setting aside the December decree and reinstating the September decree. Interspersed with these decrees were hearings on the correctness of depositions; and on March 17, 1943, there was an order entered striking out one set of depositions and substituting a rival set. From each decree and/or order the unsuccessful party in that particular hearing ''excepted and prayed an appeal to the Supreme Court''; but then the unsuccessful party went back to the chancery court for further proceedings as above shown. The record was lodged in this court on March 20, 1943, which was within six months from the September 21, 1942,

decree; so we do not have to consider any question of loss of time for appeal. By the last decree of the chancery court (March 13, 1943) the decree of September 21, 1942, was reinstated, in which the chancery court had found that the appellees herein. had paid the $40 as the assessment of 1930, and that the receiver should be permanently enjoined from selling the property of the appellees involved herein. The receiver has appealed.

## I.  The Record.

Appellees question the record herein. We attach very little importance to that contention. The testimony of two witnesses is involved. This testimony was taken by two stenographers, one selected by appellant, and the other by appellees. We accept the record as made by Mr. Ware, the stenographer selected by appellees. If his stenographic notes have lost any verity, it does not rest with appellees to make such a charge when appellees secured the notes from him and kept them for many months and had the notes transcribed for him. In the decree of September 21, 1942, this testimony is referred to as "depositions," and we so treat the testimony here. Furthermore, appellees established the identity and the incorporation of these depositions in the decree by the examination of the stenographer, Mr. Ware, at the hearing on March 13, 1943. Thus, we take the decree of September 21, 1942, and the depositions of the witnesses as taken by Mr. Ware as the most favorable to the contention of the appellees on the merits; and from this decree, and the recitals therein, we reach the conclusion that the said decree of the chancery court was in error and should be reversed.

## II.  Appellees' Right to Injunction.

When the appellees filed the petition for injunction (the beginning of the suit involved in this appeal), they alleged: ". . . that the said property has never at any time been sold to said district for nonpayment of taxes, and that said property is not due said district any taxes whatsoever . . ." The uncontroverted proof shows: (1) that the property was sold to the district for

the assessment of 1930 and the sale confirmed; and (2) that assessments against the property were and still are unpaid for the years 1931 through 1936 (totaling in excess of $400 exclusive of interest and penalties). So the allegations in the complaint for equitable relief are entirely disproved by the evidence.

Furthermore, when they filed this suit for injunction, the appellees sought equity; but we look in vain in the complaint and throughout the record for any offer to do equity. Throughout the entire case, appellees have never offered to make any further payment, but have all the time claimed that the $40 paid to the receiver in 1939 completely expunged any further claim of the district for the 1930 assessment, penalty, interest or costs; and in their brief in this court appellees say that the claims for other years subsequent to the 1930 assessment "will be met by appellees when issue is properly joined, but is irrelevant here." We thus have before us a case where the allegations of the complaint are disproved by the evidence, and where parties seeking equity have never offered to do equity. For these reasons, if for none other, appellees should be denied equitable relief. See Pomeroy on Equity (5th Ed.) § 385 ff; Simkins on Equity (2d Ed.) p. 109 ff; 30 C. J. S., Equity §§ 458-474; 32 C. J. 68.

### III. Appellees' Claim of Redemption.

But other reasons exist. The receipt issued by the receiver to the appellees for the 1930 assessment was as follows: "Received of D. F. Taylor and S. L. Gladish the sum of forty dollars for the sewer tax due the Sewer Improvement District No. 5, Osceola, Arkansas, for the year 1930, on the following described property in Osceola, Arkansas, to-wit: west 100 feet of lots 4 and 5, block 12, Townsite Addition. Tax, $40. Alene Word, Collector." The receiver testified (and her testimony is not disputed or denied by appellees on this point): "Mr. Taylor came into my office soon afterwards and told me that he and Judge Gladish were going to pay up these back taxes a year at a time. I took Mr. Taylor in good faith, and I accepted his $40 with which to pay the 1930 taxes and issued him a receipt. Several weeks passed and

Mr. Taylor did not make any further payment . . . so I sent him the district's check for $40 and told him I had been advised that the property was sold, and advised him that he owed taxes for several years, and I did not have the right to accept taxes for one year without collecting all of them . . ., but Mr. Taylor refused to accept the check and brought the letter and check back and gave it to me, and since that time they have not paid any further taxes.''

If the receipt of the receiver is susceptible of oral explanation, then the receiver has given an explanation that is not denied. If the receipt of the receiver is not susceptible of oral explanation, then the receipt shows on its face that it was only for the "tax" (assessment) and did not include any penalty or other items; and the appellees are thus left without any evidence that they have ever paid or tendered any court costs or other items to go along with the $40 as a complete tender of redemption. Appellees are thus hoisted on either horn of the dilemma.

Appellees cite § 7332 of Pope's Digest (which is § 8 of Act 2 of January, 1934, Special Session) as the authority for the receiver to collect only the assessment and court costs in allowing redemption; but this does not support appellees' contention because (1) they did not tender the costs, and (2) this section provides that "such redemption shall be made within three years after the passage of this Act." The Act was passed at the January, 1934, Special Session of the Legislature, and the redemption attempted by the appellees was not made until November 8, 1939; so the time for redemption under the provisions of that act had expired long before appellees attempted the redemption.

Appellees' payment of the $40 in November, 1939, must thus be considered as an attempted redemption under § 5644 of Crawford & Moses' Digest, as explained in *Hopkins* v. *Fields,* 202 Ark. 890, 154 S. W. 2d 22; *McCuiston* v. *White,* 189 Ark. 857, 75 S. W. 2d 392; and *Botts* v. *Stephen,* 203 Ark. 1031, 160 S. W. 2d 198. Under this section there must be a tender of "the purchase price with interest" etc. As the district had purchased the property for the delinquent assessment of 1930 plus

penalty, the appellees would have to tender those amounts and interest before there could be a completed redemption.

In *Brasch* v. *Mumey*, 99 Ark. 324, 138 S. W. 2d 458, Ann. Cas. 1913B, 38, there was involved the question of redemption in a municipal improvement district; and Mr. Justice FRAUENTHAL, speaking for the Court, said: "The right to redeem property sold under an order or decree of court is purely a privilege conferred by, and does not exist independently of, the statute. Rorer on Judicial Sales, § 906; 2 Jones on Mortgages, § 1051; 17 Am. & Eng. Enc. Law, 1034; *Boyd* v. *Holt*, 62 Ala. 296.

"The right of the owner to redeem from a judicial sale exists, therefore, only in those cases which fall within the statute giving such privilege, and can be asserted within the time and manner prescribed by the statute, and not otherwise. Rorer on Judicial Sales, § 941; 24 Cyc. 68; 17 Am. & Eng. Enc. Law, 1036; *Thompson* v. *Sherrill*, 51 Ark. 453, 11 S. W. 689; *Banks* v. *Directors*, 66 Ark. 490, 51 S. W. 830; *Gavin* v. *Ashworth*, 77 Ark. 242, 91 S. W. 303; *Traeger* v. *Mutual Bldg. & Loan Assn.*, 63 Ill. App. 286."

And again he said: "Statutes giving to an owner of property the right to redeem are remedial in their nature, and should be construed liberally in favor of the owner and his right of redemption. *Dubois* v. *Hepburn*, 10 Pet. 1, 9 L. Ed. 325. But the right of redemption is only statutory, and it must therefore be asserted in the time and manner and upon the conditions named in the statute which creates the right. The courts cannot by construction extend the time or vary the terms of the statute under which such right can be exercised."

We, therefore, hold that appellees have never completed the redemption of their property from the sale for the 1930 delinquent assessment; so they are not entitled to the injunction in the case at bar, and the chancery court was in error in its decree of September 21, 1942, and the cause should be reversed.

## IV. Appellees Right Now to Redeem.

But it does not necessarily follow that appellees have lost all right to redeem, even though the five years (under § 5644 of Crawford & Moses' Digest) has elapsed. In *Wilkins* v. *Lenon*, 182 Ark. 953, 33 S. W. 2d 1093, there was a foreclosure sale for delinquent municipal improvement district assessments. Within five years after the sale, the property owner made inquiry of the collector of the district as to the amount of delinquent assessments, and made partial payment. The collector, in answering the inquiry, failed to include the year for which the property sold. It was not discovered by the property owner until the five years had expired for redemption. Notwithstanding the lapse of five years, this court held that the attempted redemption commenced in good faith within the five years could be completed thereafter, saying: "The right to redeem is a substantial right given by statute, and was prevented from being exercised within the statutory period of five years by the neglect on the part of the collector of the improvement district to do his duty. Section 5644 of the Digest gives the owner the right of redemption at any time within five years from the date of the sale. The record shows that the offer to redeem was made within the five years allowed by statute." See, also, to the same general effect 61 C. J. 1290 and 26 R. C. L. 429.

So in the case at bar: appellees paid the receiver $40 for the 1930 delinquent assessment and have prosecuted this suit believing they had effected a redemption. The payment of the $40 constituted an effort looking towards redemption, and we therefore hold that if the appellees, within a reasonable time to be fixed by the chancery court, will deposit in the registry of the court a sum of money which, with the $40 heretofore paid to the receiver, equals the amount necessary to redeem under § 5644 of Crawford & Moses' Digest, then such redemption may be made.

## V. Delinquencies Subsequent to 1930.

But the redemption from the sale for 1930 assessment, if and when made, will not in any wise prejudice

the right of the receiver to foreclose the delinquent assessments subsequent to 1930. This is mentioned because the receiver testified that the reason the delinquent assessments for years subsequent to 1930 had not been foreclosed was because of the opinion that the district, having purchased the property for the 1930 delinquent assessments, had a right to hold the property until all other delinquent assessments were paid.

The rule as regards state and county taxes does not apply to municipal improvement district assessments. Section 13868 of Pope's Digest, concerning redemption of land sold to the State, specifically requires the redemptioner to pay "the taxes that would have accrued if such land or lot had continued on the tax books and the taxes extended. . ."; but § 5644, Crawford & Moses' Digest, concerning redemption of land bought by a municipal improvement district at its delinquent foreclosure sale, has no such language; and the general trend of authority is to the effect that the redemptioner need only comply with the statutory requirements. See 61 C. J. 1274-75.

Section 5644 of Crawford & Moses' Digest requires the owner to tender *inter alia* "special assessments meantime paid by the purchaser," but when the district buys the property and continues to hold same, then the district does not pay into its treasury the subsequent delinquencies in its own district. The delinquent assessments for years subsequent to 1930 should have been foreclosed each year as same matured (or several years could be foreclosed together) regardless of the fact that the district had purchased the property under the decree for the 1930 delinquent assessments. But the district is not prejudiced by reason of the failure to previously institute these foreclosures; and any redemption for the 1930 delinquency will not affect the right of the district to foreclose for delinquencies for subsequent years.

To summarize: The decree of the chancery court is reversed and the cause remanded to the chancery court with directions to deny the injunction sought by the appellees, but without prejudice to the appellees, to effect redemption, within a reasonable time, in accordance with

this opinion; and also without prejudice to the receiver to file suit to foreclose for any delinquent assessments. All costs of this appeal and all costs in the lower court are adjudged against the appellees.