SANDERS *v.* MHOON.

4-8551 · 217 S. W. 2d 349

Opinion delivered February 14, 1949.

590

*H. M. Trieber,* for appellant.

*U. A. Gentry,* for appellee.

*A. F. Triplett, Townsend & Townsend,* and *Rose, Dobyns, Meek & House, amici curiae.*

GRIFFIN SMITH, Chief Justice. Lot Nine in Block Four, Young's Park Addition to Little Rock, is in Street Improvement District No. 504, and Sewer Improvement District No. 94. Each district foreclosed and, *prima facie,* acquired title with confirmation, and they later conveyed. Sanders bought from District 504, while Mhoon, through mesne conveyances, acquired whatever rights District 94 may have had. The appeal requires a determination of relative rights of the two purchases.

Under three foreclosures, beginning with 1932 delinquencies, District 504 extinguished betterment liens aggregating $379.79 and assigned to Sanders its certificates of purchase. At that time the District had discharged its bond obligations and was in the process of liquidation by methods designed to equalize the tax burden, involving refunds on tracts that had overpaid. As a part of the equalization process, unforeclosed liens on Lot Nine against which particular assessments had been made were assigned to Sanders. These amounted to $90.25.[1]

As reflected by the foreclosed and unforeclosed items, the District's concern was with $470.04. However, in selling to Sanders, two other lots were included for a

---

[1] The unforeclosed assessments were for 1939 and 1945. Suit for the 1939 item was filed before limitation ran, and was pending when the trial from which this appeal comes was concluded. The decree recites that the cause of action (involving $46) belonged to Sanders.

gross payment of $750 for the three. Assessments for 1946 and 1947, aggregating $80, were paid by Sanders on Lot Nine as a part of the consideration.

District 94 foreclosed in 1938 for 1932 and 1934 assessments—$12.54. This interest was assigned to Mhoon's predecessor in title for $5.50. But general taxes on Lot Nine for 1931 were not paid, and the property was certified for sale with extension that included illegal millage assessment for pension funds, of the kind mentioned in *Adamson* v. *City of Little Rock,* 199 Ark. 435, 134 S. W. 2d 558.[2]

The appropriate charge for which Mhoon's predecessor purchased from the State was $6.58, and under assignments showing color of title Mhoon thereafter paid current general taxes in a timely manner, aggregating $46.06.[3]

This appeal's decree finds, as to District 504, that its last two foreclosures were not invalid because of the 1936 sale and the District's purchase, and that Sanders and Mhoon, in buying from the Districts, became tenants in common, each owning an equal undivided interest, and each interest being subject to a lien "against the whole property in favor of the other." The interests would not be affected because of disproportionate outlay of purchase money.

As to Sanders, enforcible items covered by his lien were $86.58 for 1946-'7 taxes and interest, plus $277.75, this, with interest, being a third of $750 Sanders had paid for the three lots. The total is $364.33. Mhoon's lien includes the general tax items for 1931, (when purged of the illegal millage) plus current taxes, with interest; also the amount paid by Mhoon's predecessor when the District assigned its certificate—a total of $77.26.

Sanders contended that there should be added to the item of $86.58 the face value of foreclosed liens that were

[2] Invalidity of a tax sale including the pension fund millage was determined in *Schuman* v. *Walthour,* 204 Ark. 634, 163 S. W. 2d 517.

[3] The Chancellor found that any interest a proprietor may have had in the lot when it forfeited to the State, and at the time of foreclosures by the District was divested by a decree from which no appeal was taken.

assigned to him by the District, with interest of $212.24, together with unforeclosed and unbarred liens, amounting with interest to $592.03, hence the lien should be for $800.92. On the same basis Mhoon's lien would be $88.76. The Court expressly rejected this method of computing the relative rights.

The final decree fixed Sanders' lien at $364.33 and Mhoon's at $77.26 and established parity, dischargeable through foreclosure of the entire property. There was an express finding that Sanders and Mhoon, as between themselves, own fee title to the lot as tenants in common, subject to the lien of each against the entire property by way of subrogation through investiture of titles formerly held by the Districts.

By Act of May 3, 1901, Pope's Digest, § 7306, betterment assessments in municipal improvement districts became fixed liens on the realty and are "entitled to preference over all judgments, executions, incumbrances or liens whensoever created," to continue "until such local assessment . . . shall be paid." Act 177 of 1913, Pope's Digest, § 4497, amended certain other laws (specifically Act 279 of 1909—the comprehensive drainage district measure), and by § 14 provides for the sale of lands "for the taxes of drainage districts *and other improvement districts in this State.*"

Since all bonds in each of the two municipal districts with which we are concerned had been retired when the interests of Sanders and Mhoon were decreed, it is not necessary to consider lien priorities unless we measure the interests of these litigants by the rights the districts would have if they had remained owners of the property.

While bonds were outstanding those who owned them (acting through trustee) were secured by liens upon *betterments* as distinguished from the land itself; but the District boards, charged with the duty of collecting assessments under statutory processes, were required to foreclose, and ordinarily, in a trust capacity, became owner of the realty. Here each Districts' obligations to the bondholders had ended, and its duty was to adminis-

ter the assets in a way to create equality between those who had paid and those who were delinquent.

If we were considering rights of contesting districts where one's foreclosure was prior to the other's, and redemption periods had expired so that the prior landowner could not prevail, support for parity of interest could be found in *Board of Commissioners of McKinney Bayou Drainage District* v. *Board of Directors of Garland Levee District*, 181 Ark. 898, at p. 903 *et seq.*, 28 S. W. 2d 721, for the language (though perhaps not necessary to a determination of the issues there involved) is that neither district has a priority of lien over the other, "except as stated above." In *Turley* v. *St. Francis County Road Improvement District No. 4*, 171 Ark. 939, 287 S. W. 196, it was said, in respect of the statute there under consideration, that "the lawmakers, in the exercise of their authority, have provided for coördinate enforcement of liens of the State for general taxes and improvement districts in recognition of the continuation of both liens."[4] Another paragraph in the *McKinney Bayou-Garland Levee* case is: "If a sale of land, under the paramount lien of the State for delinquent taxes does not extinguish the inferior or subordinate liens of improvement districts, it necessarily follows, we believe, that a sale for delinquent taxes in an improvement district that is prior only in that it was first created would not extinguish the lien of another district subsequently created by the State."

With convincing logic it might be argued that, where statutory requirements have been met as to procedure and jointure of parties, the last decree (the proceeding being in *rem*) would cut off prior claims. The consequences of a judicial finding of priority in either situation was discussed in the *McKinney Bayou-Garland Levee* case, *supra*, with a holding that each district was complementary to the other. The priority mentioned in the statute, said Mr. Justice McHaney, means liens that

---

[4] See Act 126 of 1939.

are acquired by virtue of contractual relations between individuals or private corporations.[5]

We have stressed parts of the McHaney opinion to show that it was the Court's thought that where express or necessarily implied statutory treatment had not been provided, equity would afford the answer, and in circumstances such as we have here, decree a just adjudication.

Sanders and Mhoon are antagonistic contenders. Each has invested money in a different District's claim to the land. If interests of the Districts "coördinate," as Judge McHaney said in the opinion quoted from, and if neither District was prior or subsequent in point of foreclosure lien, an equitable solution of the problem is to say that Sanders has a lien for $364.33, as the Chancellor established, and that Mhoon's lien was correctly fixed at $77.26. The percentage ratio is 82.50 and 17.50.

We do not find in the transactions a basis for applying the rule of contenancy. Each District had liquidated its bonded indebtedness, and as to the property here involved had disposed of whatever title or claim it had. The two purchasers ask for a determination of their relative rights. Ordinarily, in a situation such as this, one purchaser would claim possession adverse to the other. Not so here.

From the proceeds of sale, to be directed by the Chancellor, each litigant will be paid the amount of his lien with interest from judgment. If the fund be insufficient to fully discharge the liens, appellant and appellee will share under the percentage ratio mentioned. If, however, proceeds of the sale should exceed the sums required to pay costs and sale (both of which shall first be paid from proceeds of the sale) and to discharge the respective liens, the excess remaining shall be divided 82.50 percent to Sanders and 17.50 percent to Mhoon.

Reversed and remanded.

Mr. Justice GEORGE ROSE SMITH did not participate in the consideration or determination of the case; Mr.

[5] No doubt the lien of a judgment based upon a tort action would be included, but it is not mentioned in the opinion.

Justice MINOR W. MILLWEE dissents from the action of the Court in not finding that the relationship of cotenants existed.