STREET IMPROVEMENT DISTRICT No. 419 *v.* PINKERT.

4-9764                                 253 S. W. 2d 780

Opinion delivered December 1, 1952.

*Townsend & Townsend,* for appellant.

*U. A. Gentry,* for appellee.

GEORGE ROSE SMITH, J. This case presents varied questions that arise from the fact that our laws permit overlapping improvement districts to foreclose their tax liens separately and thereby acquire independent titles to the same property. Here this conflict of ownership results from successive foreclosure suits brought by a Little Rock sewer district and a Little Rock street district, the appellant. Each district bought in the land at its own sale.

In the court below this was a three-cornered controversy involving the title to two city lots. Pinkert, the

first litigant, brought suit to quiet the title he had acquired by mesne conveyances from the sewer district. McMinn, the second litigant, defended the suit on the ground that the street district had foreclosed the lien of its assessments for 1934 and 1935 and had conveyed its title to him. The street district, the third litigant, intervened to contend that even though it had conveyed its first foreclosure title to McMinn in 1947, it was nevertheless entitled to foreclose its lien for assessments coming due after 1935; that is, for the years not represented by the title previously conveyed to McMinn. It is not contended that the street district is barred by the special statute of limitations applicable to counties having a population in excess of 75,000, Ark. Stats. 1947, §§ 20-1140 and 20-1142; for the district has kept its liens alive by bringing suits from time to time, though most of these cases have not been pressed to conclusion.

The chancellor ordered a public sale, as all three parties desired, but he permitted only Pinkert and McMinn to share in the proceeds. It being shown that the sewer district had sold its title to Pinkert's predecessor for $5.50 and that the street district had sold its 1934-1935 title to McMinn for $147.18, the chancellor decreed that the proceeds of sale should be applied to the repayment of these amounts, as well as to the reimbursement of certain general taxes paid by McMinn, and that the surplus should be divided in the ratio of 3.6% to Pinkert and 96.4% to McMinn. *Sanders* v. *Mhoon*, 214 Ark. 589, 217 S. W. 2d 349. The chancellor further held that the street district's liens after 1935 had merged in its original foreclosure title, so that the district had no claim to the proceeds of sale. The district brings the case to us for review.

In order to determine the respective rights of the three claimants we must first ascertain the relative positions of the two districts after each had acquired title by foreclosure. In spite of our many decisions in the field of improvement district law we have not definitively settled the status of title when two districts foreclose their liens against the same land.

At least three theories have been suggested. (1) The first district to foreclose acquires title free of the accrued liens of any other district, a result that may be obtained by a proceeding under a seldom-invoked provision of the statutes. Ark. Stats., § 21-548; *Board of Com. of McKinney Bayou Dr. Dist.* v. *Board of Dir. of Garland Levee Dist.,* 181 Ark. 898, 28 S. W. 2d 721. (2) "Title is in the district holding the last sale, subject to the liens of the other districts." Walker, "Conflicting Tax Titles in Overlapping Improvement Districts in Arkansas," 1 Ark. L. Rev. 32. (3) The districts become tenants in common.

In our attempt to arrive at the theory that best harmonizes with existing law we take as our starting point the settled rule that the liens of different districts are on a parity with one another. *McKinney Bayou, supra.* If this condition of equality has any meaning in practice, it must follow that neither district should lose its claim to parity by reason of having foreclosed its lien or by reason of not having done so. The worth of a legal right can be measured only by the remedy available; so it would be idle to say that two original liens are on a parity and yet in the next breath to declare that the early or delayed enforcement of one lien confers priority.

It is for this reason that the first two theories are out of harmony with our decisions. In nearly every case the combined claims of two overlapping districts represent only a fraction of the value of the land. Thus there is almost always an equity or profit that is potentially available either to one district or to both, if title be acquired by foreclosure. The defect in theories (1) and (2) is that this profit is given entirely to one district only, destroying the parity of lien that is contemplated by the statutes.

Under the second theory, for example, the first foreclosing district acquires the entire ownership, subject only to the lien of the second district. But if the second district then enforces its lien, it in turn acquires the whole title, subject now to the lien of the first district.

Presumably it would then behoove the first district to bring a second suit in order to reinstate its priority. We are unable to see at what point this series of lawsuits would end, unless, as in *Jarndyce* v. *Jarndyce,* the court costs finally consume the property. The first theory is even less acceptable, for it permits the first foreclosing district to extinguish the accrued claims of the others.

No similar objection can be made to the theory of a tenancy in common, which has been adopted elsewhere in analogous situations. *Monheit* v. *Cigna,* 28 Calif. 2d 19, 168 P. 2d 965, 167 A. L. R. 995; *In re Gould,* 110 Minn. 324, 125 N. W. 273; *Gould* v. *City of St. Paul,* 120 Minn. 172, 139 N. W. 293. Under this view the first foreclosing district obtains title, subject to the liens of other districts. But when a second district obtains title at its own later sale it becomes a tenant in common with the first, in somewhat the same way as a vested remainder in brothers and sisters may open up to admit afterborn members of the class. *Greer* v. *Parker,* 209 Ark. 553, 191 S. W. 2d 584.

It may be noted that the California and Minnesota cases are not in complete agreement as to the interests of the respective co-tenants. In California the co-tenants are first reimbursed to the amount of their claims, and any surplus is then divided equally. This procedure disturbs the basic parity of claims, by giving the lesser cotenant a disproportionate share of the potential profit. As indicated by our conclusion in *Sanders* v. *Mhoon,* 214 Ark. 589, 217 S. W. 2d 349, we prefer the Minnesota view, by which the two taxing authorities are simply tenants in common in the ratio of their respective claims. In this way the equality of lien is preserved from beginning to end.

We hold, then, that by its 1934-1935 foreclosure suit the street district acquired legal title to the property, as a tenant in common with the sewer district. It is contended by the appellee Pinkert that the street district's claim for assessments coming due while it owned the property merged with its previously acquired title. **It** is true that our holding in *Crowe* v. *Wells River Sav. Bk.,*

182 Ark. 672, 32 S. W. 2d 617, supports this contention. There we said that while a road district held the title to property it could not bring suit to collect a later assessment. Our reasoning was that since the State cannot levy taxes against land owned by an improvement district, it follows that the land is equally exempt from improvement district taxes while title is in the district. Yet the two situations are not in fact alike. The reason that improvement district property is immune from State taxation lies in the constitutional provision exempting public property from taxation. Ark. Const., Art. 16, § 5. But there is no similar provision that prevents an improvement district from taxing public property; on the contrary, a number of statutes have authorized the assessment of benefits against public property. Sloan, Improvement Districts in Arkansas, § 865.

Although the *Crowe* case has not been expressly overruled, later cases have disregarded its doctrine. In *Deaner* v. *Gwaltney,* 194 Ark. 332, 108 S. W. 2d 600, we recognized that even though the title is in one district the property may still be subject to the claims of another district, as we said: "The drainage district and the levee district are separate districts, and have levied taxes based upon different benefits, which each may enforce without reference to the action of the other." In a situation like that presented by the case at bar we were even more explicit in *Word* v. *Grigsby,* 206 Ark. 164, 174 S. W. 2d 439: "The delinquent assessments for years subsequent to 1930 should have been foreclosed each year as same matured (or several years could be foreclosed together) regardless of the fact that the district had purchased the property under the decree for the 1930 delinquent assessments." In view of these later decisions we are of the opinion that the street district's matured claims subsequent to 1935 did not merge in its 1934-1935 title.

Of course, it would have been permissible for the district to accept McMinn's purchase money in 1947 as full satisfaction of all claims then held by the district against these lots; but on this record that is not what

the parties intended. The district assigned its 1934-1935 certificates of purchase to McMinn, who then obtained a deed from the court commissioner who had conducted the sale. In its decree below the court found that the consideration paid by McMinn exactly equalled the district's taxes for 1934 and 1935, together with penalties, costs, etc. It is significant that the district did not assign to McMinn its later certificates of purchase, nor did it release these lots from its pending suits. Clearly the district meant to sell, and McMinn meant to buy, only the district's original title, subject to its claim for later assessments. As a practical matter it is desirable to permit the parties to adopt this course, since on the one hand a hard-pressed landowner may not be able to satisfy all the taxing agency's claims at one time, and on the other the district may not wish to collect later assessments until it becomes evident that they are needed to pay debts or to equalize the tax burden among the landowners.

We conclude that Pinkert and McMinn are tenants in common in the ratio of the amounts paid by them or their predecessors in obtaining title from the districts. We need not pause to demonstrate, as it is easy to do, why a ratio based on the respective payments to the districts, rather than one based on the districts' original claims, is to the best interest not only of the districts themselves but also of the original landowner. We expressly adopted the former ratio in the *Sanders* case, *supra*. There Sanders had purchased from one district for $364.33, and Mhoon's predecessor had purchased from another district for $77.26. We said that they had liens for those amounts and that upon a sale of the property each litigant should be repaid the amount of his lien, with the surplus to be divided between them in the same ratio. It is evident that the injection of this lien concept is somewhat awkward both in theory and in practice. Even assuming that a purchaser from a district acquires in some way a lien as well as an interest in the fee, we perceive no reason why the lien should not merge in the fee if it be held, as it was in that case, that the purchasers' liens are in exactly the same pro-

portion as their interest in the equity over and above the liens. In practice this result is altogether desirable, since the existence of a lien necessarily means that one party or the other must bring suit to foreclose, while the recognition of a merger eliminates that needless litigation. Hence we adhere to the result reached in the *Sanders* case, but we approve the simpler and more direct theory of a tenancy in common.

It follows that the chancellor was right in dividing the surplus proceeds of sale in the ratio of 3.6% to Pinkert and 96.4% to McMinn. But the decree should have ordered the foreclosure of the street district's liens, with the proceeds of sale to be applied first to the satisfaction of its claims, next to the repayment of general taxes paid by any party to the suit, and the remainder to be distributed to the tenants in common in proportion to their interests. The decree must be reversed and the cause remanded for further proceedings.

McFADDIN, J., concurs in the result.

ED. F. McFADDIN, Justice (concurring). I agree with the result reached in this case; but I dissent (a) from some of the language in the opinion and (b) from the extent to which the majority has seen fit to go.

The majority has stated in its opinion:

"We conclude that Pinkert and McMinn are tenants in common in the ratio of the amounts paid by them or their predecessors in obtaining title from the Districts."

To this language, designating Pinkert and McMinn as tenants in common, I respectfully direct this dissent; and here are my reasons:

(1) After long and serious consideration in *Sanders* v. *Mhoon*, 214 Ark. 589, 217 S. W. 2d 349, we refused to denominate the relationship as "tenants in common." The majority is now doing what we deliberately refused to do in *Sanders* v. *Mhoon*.

(2) Furthermore, to say that Pinkert and McMinn are *"tenants in common"* is dictum. It is only necessary for us in this case to settle the rights between the litigants;

and it is not necessary for us to designate or denominate their relationship so as to surround these parties, and other parties that may be similarly situated, with the rights and duties flowing from the relationship of tenancy in common. I urged my brother judges to use language (a) that the relationship between Pinkert and McMinn, insofar as this case was concerned, had the aspects of tenancy in common, or (b) that the rights of Pinkert and McMinn could be settled by applying some of the rules of tenancy in common. Either statement would have been sufficient for this opinion; and anything beyond such statement is dictum.

(3) The language of the majority in designating Pinkert and McMinn as tenants in common is language that will come back to plague us in future cases. Tenants in common have certain rights, duties and liabilities, and remedies between themselves and as regards others. Some such items are adverse possession, payment of taxes, improvements, repairs and tax sales. An examination of any treatise or law encyclopedia article on co-tenancy will disclose a multitude of matters relating to tenants in common. I predict that the rules on these various matters cannot be applied in all—or even in a majority of—instances between persons situated as are Pinkert and McMinn in the case at bar, who have acquired separate and distinct titles under improvement district foreclosure proceedings. Eventually the language of the majority in the case at bar will have to be explained and modified.

Therefore, to summarize: the majority has gone further than we went in *Sanders* v. *Mhoon;* the language as to co-tenancy was broader than was necessary to a holding in the case at bar; and the designation of co-tenancy will come back to plague us.